A98A1120. COMVEST, L.L.C. v. CORPORATE SECURITIES GROUP, INC. et al.
(507 SE2d 21)

BEASLEY, Judge.

In January 1996, Comvest, L.L.C., sued Corporate Securities Group, Inc. (CSG), J. W. Charles Securities, Inc. (JWCS), J. W. Charles Clearing Corporation (JWCCC), Patrick Dennis, and Eugene Tournour in the State Court of DeKalb County for the principal amount of $2,052, based on allegations of fraud in the sale of securities. This is an interlocutory appeal from the grant of defendants' motion to compel arbitration and stay the suit pending arbitration.[1] The court ruled that Comvest is bound by an arbitration clause in a customer agreement that was sent to Comvest but never signed.

Comvest is an investment corporation whose president is Marvin

---

[1] See *Phillips Constr. Co. v. Cowart Iron Works*, 250 Ga. 488, 490 (299 SE2d 538) (1983).

Nodvin, an attorney. In October 1994, Dennis and Tournour, as representatives of CSG, contacted Nodvin to sell units of stock and warrants in an initial public offering of The Singing Machine Company, Inc. On behalf of Comvest, Nodvin purchased the units for $2,052 the following month.

Affidavits by CSG's director of compliance Wagner and Comvest's account representative Tournour show that when a new customer account is opened at CSG, the name and address of the customer are entered into the CSG computer system resulting in the assignment of an account number. On the next day the system generates two bar-coded mailing labels containing the name, address, and account number of the customer. One label is placed on a customer agreement, and the other is placed on an envelope in which the customer agreement is mailed to the customer. This practice allows the customer to receive the customer agreement before the settlement date of the customer's first trade with CSG. CSG's policy is that all customers must sign a customer agreement, although CSG allows its clients as a courtesy to place an initial transaction order at the time the account is opened and before the customer agreement is returned by the customer.

These affidavits further evidence that every 30 days, CSG's documentation department checks every account to assure that necessary paperwork, including the customer agreement, has been returned by the customer. Each month, a deficiency report is generated for each representative who has an account which lacks any required documents. In December 1994, the documentation department determined that the customer agreement for the Comvest account was not on file, and Tournour was notified of this fact via the deficiency report. As a result, he mailed a second copy of the customer agreement to Nodvin with a request that it be signed and returned to CSG. The Comvest account was also coded on the firm's computer system so as to place it on restricted status and prohibit further trading.

Attached to Wagner's affidavit is a bar-coded mailing label containing the correct name, address, and account number for the Comvest account and a copy of the customer agreement form then used by CSG requiring that all controversies be submitted to arbitration.

Affidavits by Scarlett, CSG's general counsel, and Hovdesven, an attorney who practices with the law firm representing defendants, show that it is the practice of virtually every firm in the securities industry to utilize customer agreements which provide for mandatory arbitration of all customer/broker disputes. Scarlett testified that if Comvest had informed CSG it was unwilling to sign a customer agreement, CSG would have refused to open an account for it.

Hovdesven testified that he personally conducted a search of the

DeKalb County court records which revealed three actions in state court and one action in superior court filed by Nodvin or entities controlled by him alleging fraud in the purchase or sale of securities. A default judgment was entered in the first state court action. In the remainder, defendants presented customer agreements containing arbitration clauses. A motion to compel arbitration was granted in one action and another was dismissed with prejudice. In the last action, which was removed from superior court to federal court, Nodvin claimed he had not signed the customer agreement.

In this case, Nodvin testified by affidavit that he did not receive correspondence from any of the defendants regarding an arbitration agreement. Nevertheless, the court found that a customer agreement was sent to Nodvin and concluded that, considering all the circumstances, Comvest is bound by the arbitration clause even if Nodvin did not sign the agreement.

1. The transaction is governed by the Federal Arbitration Act.[2] The parties have not made an appeal issue of what law applies. Defendants argued in the trial court that the FAA does, although the customer agreement provides that "[it] and its enforcement shall be governed by the laws of the State of Florida. . . ." Florida law was not presented.[3] Since the contract relates to transactions in interstate commerce, we decide the case pursuant to the FAA.[4] Accordingly, the court decides the issue of whether a party is bound to arbitrate an agreement.[5] Thus questions of credibility are for the court as factfinder.

2. Contrary to arguments advanced by Comvest, the court did not find that Nodvin signed the customer agreement. The evidence supports findings that the customer agreement was mailed to and received by Nodvin and that he knew it was standard practice for brokerage firms to require customers to submit disputes to arbitration.

In reliance on *Bank South v. Grizzle*,[6] Comvest questions whether there was sufficient evidence of mailing and receipt. *Grizzle*

---

[2] 9 USC § 1 et seq., which establishes " 'a federal policy favoring arbitration.' " *Shearson/American Express v. McMahon*, 482 U. S. 220, 226 (107 SC 2332, 96 LE2d 185) (1987).

[3] OCGA §§ 9-11-43 (c); 24-7-24 (a). See *KMM Indus. v. Professional Placement Assn.*, 164 Ga. App. 475 (297 SE2d 512) (1982) (where a person relies on the law of another state, the law of the foreign state must be proven).

[4] See *North Augusta Assoc. v. 1815 Exchange*, 220 Ga. App. 790, 791 (1) (469 SE2d 759) (1996) (as held by United States Supreme Court, FAA governs interstate commerce contract unless agreement contains choice of law provision); *Columbus Anesthesia Group v. Kutzner*, 218 Ga. App. 51, 52 (1) (459 SE2d 422) (1995) (FAA not applicable because contract did not involve interstate commerce).

[5] *AT&T Technologies v. Communications Workers of America*, 475 U. S. 643, 649 (106 SC 1415, 89 LE2d 648) (1986).

[6] 218 Ga. App. 462 (1) (462 SE2d 170) (1995).

recognized that no presumption arises that a letter has been received by the addressee unless it is shown that the letter was written, was properly addressed to the party, contained the correct postage, and was duly mailed in the United States Post Office. Grizzle attempted to infer from circumstances that Bank South had received a letter he claimed he had sent. We held there was no showing the letter was mailed, and the ambiguous circumstances relied on by Grizzle did not create an issue of fact as to whether the letter was received.

Unlike *Grizzle*, the evidence in Comvest's case shows that agreements were mailed on two occasions and were properly addressed. Although Wagner's and Tournour's affidavits did not establish all the elements necessary to create a rebuttable presumption of receipt, their testimony created an issue as to this fact. The evidence supports resolution of the issue in defendants' favor.

The affidavits of Hovdesven and Scarlett authorized the court to find that Nodvin purchased the securities with knowledge of the industry practice requiring the submission of customer/broker disputes to arbitration. It is proper in determining the enforceability of an unsigned arbitration agreement to consider whether the customer was knowledgeable of industry practices. Meritless is Comvest's argument that Hovdesven's testimony concerning other litigation involving Nodvin lacks probative value. Comvest relies on *Bowden v. Taylor*,[7] which states that the only legal method to prove judicial proceedings is by an extract from the court minutes, duly certified by the clerk. Most of the litigation referred to in Hovdesven's affidavit took place in the DeKalb State Court, and a court may take judicial notice of its own records for evidentiary purposes in a case.[8]

Although Comvest objected to the trial court's consideration of defendants' affidavits on other grounds, rulings on these objections have not been enumerated as error and thus have not been preserved for appellate review.[9]

3. The court did not err in concluding that even in the absence of Nodvin's signature, Comvest is bound by the arbitration clause.

"[A] party may be bound by an agreement to arbitrate even in the absence of his signature. [Cits.] Ordinary contract principles determine who is bound by a written arbitration agreement. [Cits.]"[10] "[P]arties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract, or the acceptance by

---

[7] 81 Ga. 199, 202 (3) (6 SE 277) (1888).

[8] *Graves v. State*, 227 Ga. App. 628, 630 (490 SE2d 111) (1997).

[9] See *William N. Robbins, P.C. v. Burns*, 227 Ga. App. 262, 265 (2) (488 SE2d 760) (1997).

[10] *Valero Refining v. M/T Lauberhorn*, 813 F2d 60, 64 (4) (5th Cir. 1987).

one of the performance by the other."[11] Comvest ratified the contract through its retention of the securities for over one year before bringing this suit.

4. Comvest contends that it is only bound to arbitrate controversies with JWCCC, because that corporation and Comvest are the only parties to the agreement allegedly mailed to Comvest. Yet in its complaint, Comvest acknowledges that CSG and JWCS are alter egos of JWCCC. Non-signatory business entities are covered by arbitration agreements entered into by corporations which are their alter egos.[12]

As employees and representatives of CSG, Dennis and Tournour are likewise governed. "Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements. [Cits.]"[13] What is more, the customer agreement expressly states that the arbitration clause applies to the broker.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 21, 1998 —
RECONSIDERATION DENIED SEPTEMBER 9, 1998 — 

*Marvin P. Nodvin*, for appellant.
*Sadler & Associates, John P. Sadler, Eric R. Hovdesven*, for appellees.

---

[11] (Footnotes omitted.) 17A AmJur2d 195-196, Contracts, § 185 (1991).

[12] *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F3d 1110, 1122 (9) (3rd Cir. 1993).

[13] Id. at 1121 (8); accord *Ross v. Mathis*, 624 FSupp. 110, 113 (2) (N. D. Ga. 1985).