## A03A1332. AUTONATION FINANCIAL SERVICES CORPORATION v. ARAIN.
### (592 SE2d 96)

ADAMS, Judge.

Khalid Arain filed a class action complaint against AutoNation Financial Services Corporation and George Sutherlin Nissan, Inc. in connection with his purchase of a Theft Protection Program (TPP) at the time he bought a new car from Sutherlin. The complaint asserts claims under Georgia's Racketeer Influenced and Corrupt Organizations Act (RICO), OCGA § 16-14-1 et seq., and alleges that Sutherlin, in its capacity as agent for AutoNation, made misrepresentations regarding the TPP.

Both defendants moved to compel the arbitration of Arain's claims pursuant to a clause contained in the Motor Vehicle Installment Sales Contract he signed at the time he purchased the car. Sutherlin Nissan was a signatory to the installment contract, but AutoNation was not. It is undisputed, however, that Arain financed his purchase of the TPP through the installment contract, and in fact, Arain seeks to recover the finance charges he paid under that contract in connection with the TPP. Arain also signed an agreement specifically covering the TPP he purchased from AutoNation, and Sutherlin signed the agreement as agent for AutoNation. But that agreement does not contain an arbitration clause.

After the defendants moved for arbitration, Arain voluntarily dismissed his claims against Sutherlin without prejudice. The trial court subsequently denied AutoNation's motion to compel arbitration on the ground that AutoNation was a nonsignatory to the installment contract. AutoNation appeals the denial of its motion.

1. AutoNation first contends that the trial court erred in making this ruling because it was an issue for the arbitrators and not the court. The arbitration provision contained in the installment contract reads, in pertinent part:

> [A]ny controversy, claim, dispute or issue related to or arising from (A) the interpretation, negotiation, execution, assignment, administration, repayment, modification, or extension of this contract; (B) any charge or cost incurred

pursuant to this contract; (C) the collection of any amounts due under this contract or any assignment thereof; (D) an alleged tort related to or arising out of this contract or (E) any breach of any provision of this contract, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA Rules").

The clause then specifically states that "[a]ny disagreement as to whether a particular dispute or claim is subject to arbitration . . . shall be decided by arbitration."

Despite this language, we find that the trial court properly addressed the issue of whether AutoNation could compel arbitration. Arain contends that he never entered into an arbitration agreement with AutoNation at all, and indeed, there is no such document signed by those two parties. It is a fundamental principle that a party cannot be forced to submit to arbitration if he has not agreed to do so. *Volt Information Sciences v. Bd. of Trustees of the Leland Stanford Junior Univ.*, 489 U. S. 468, 478 (109 SC 1248, 103 LE2d 488) (1989). Thus, where, as here, the existence of an agreement to arbitrate is at issue, the trial court, not the arbitrators, must decide whether arbitration may be enforced against the parties. *Chastain v. Robinson-Humphrey Co.*, 957 F2d 851, 854-855 (11th Cir. 1992). Accordingly, it is for the courts to decide the issue of whether AutoNation could compel Arain to arbitrate his claims.

2. And we find that "the intentions of the parties as derived from the agreement [are] that the arbitration clause is governed by the Federal Arbitration Act, 9 USC § 1 [et seq.]" *Primerica Financial Svcs. v. Wise*, 217 Ga. App. 36-37 (1) (456 SE2d 631) (1995). The arbitration clause provides that "[a]ll parties to this contract specifically acknowledge and agree that this contract evidences a 'transaction involving commerce' under the Federal Arbitration Act and each party to this Agreement hereby waives and relinquishes any right to claim otherwise." Although the installment contract also states that it "will be governed by the laws of the State of Georgia" the language of the arbitration clause makes clear the parties' intention that it is governed by the FAA. Id. at 37 (1); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U. S. 52, 64 (115 SC 1212, 131 LE2d 76) (1995). Compare *Southwire Co. v. American Arbitration Assn.*, 248 Ga. App. 226 (545 SE2d 681) (2001) (holding that the Georgia Arbitration Code governs where contract contains only a Georgia choice of law provision).

In addressing the issues before us, therefore, we must apply the "federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." (Citations and punctua-

tion omitted.) *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U. S. 614, 626 (II) (105 SC 3346, 87 LE2d 444) (1985). This means that although general state law principles of contract interpretation apply to the contract as a whole, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Information Sciences*, 489 U. S. at 476.

3. Applying these principles, we now turn to the issue of whether AutoNation can enforce Arain's arbitration agreement with Sutherlin.

This Court has addressed the issue of whether a nonsignatory can enforce an arbitration agreement on a number of occasions. In one case, the Court allowed a nonsignatory securities broker to enforce an arbitration agreement to which his employer was a party, where the brokerage firm and the broker were sued as joint tortfeasors. *Paine, Webber, Jackson & Curtis v. McNeal*, 143 Ga. App. 579, 582 (5) (239 SE2d 401) (1977). The Court reasoned that the ends of justice were better served by allowing the broker to participate in any arbitration[1] because an action as to one tortfeasor inured to the benefit of the other and because pursuing claims in separate forums as to each defendant could result in conflicting decisions. Id.

Relying upon that decision, this Court held in *Brinson v. Martin*, 220 Ga. App. 638, 641 (2) (469 SE2d 537) (1996), that a nonsignatory defendant could enforce a forum selection clause in a contract signed by his co-defendant employer, where the claims arose directly and indirectly from the contract containing the clause.

And in *Comvest, LLC v. Corporate Securities Group*, 234 Ga. App. 277, 280-281 (3) (507 SE2d 21) (1998), this Court held that a securities customer was compelled to arbitrate his claims against his brokerage firm although he never signed an arbitration agreement. In support of this conclusion, the Court found that a customer agreement containing an arbitration clause had been mailed to the customer for his signature on two occasions; that the customer was aware of the industry practice of requiring such arbitration agreements; and that the customer accepted benefits under the customer agreement by retaining securities purchased from the firm for over one year. Id. In addition, the Court held that two nonsignatory brokers named as defendants could also enforce the arbitration agreement under general agency principles, noting further that the agreement expressly provided that it applied to the brokers. Id. at 281 (4).

---

[1] The Court also remanded the case to the trial court for a determination of whether the brokerage firm's motion to arbitrate should be granted under the FAA. *McNeal*, 143 Ga. App. at 581 (4). If the trial court granted the brokerage firm's motion, then the broker was also entitled to arbitration. Id. at 582 (5).

The trial court held that the *McNeal* and *Brinson* cases were distinguishable from this case, however, because only AutoNation, a nonsignatory, remains as defendant in the action, and thus no concern arises regarding the potential of conflicting decisions. But we note that in *McNeal*, when the claims against the brokerage firm were dismissed on the ground of res judicata, this Court, applying the law of the case rule, found that the broker could still enforce arbitration.[2] The Court stated that "an adjudication in favor of Paine-Webber on other grounds would not affect this court's prior determination that the right to arbitration inures to [the broker's] benefit as a joint tortfeasor with Paine-Webber in connection with the underlying claim." *Paine, Webber, Jackson & Curtis v. McNeal*, 161 Ga. App. 835, 839 (3) (288 SE2d 761) (1982).

Moreover, Arain originally named Sutherlin, the signatory, as a defendant in the lawsuit, and his dismissal of Sutherlin is without prejudice. We note that he filed this dismissal only after the defendants moved to compel arbitration. The limitations period for claims under the Georgia RICO statute is five years, OCGA § 16-14-8, and the transaction at issue here occurred in January 2000. Thus, there is nothing to prevent Arain from reasserting timely claims against Sutherlin, and the potential for conflicting decisions still exists in this case.

In any event, we do not believe that the potential for conflicting decisions should be the sole determining factor in deciding whether a nonsignatory is entitled to arbitration. As noted above, this Court has considered a number of other factors in this context, including the status of the parties as joint tortfeasors, the relationship of the claims to the arbitration contract, and the existence of an agency relationship.

Further, giving due regard to the federal policy favoring arbitration, we find several recent decisions on this issue by the Eleventh and Fifth Circuit Courts of Appeals to be instructive. The Eleventh Circuit has identified three "limited exceptions" under which a nonsignatory to a contract may compel arbitration. *MS Dealer Svc. Corp. v. Franklin*, 177 F3d 942, 947 (11th Cir. 1999). These exceptions arise under (1) the doctrine of equitable estoppel, (2) agency principles, and (3) the concept of third-party liability. Id.

In discussing the application of equitable estoppel in this context, the Eleventh Circuit has noted that two independent bases exist for the application of the doctrine: (1) when the claims relate to the contract or (2) when the claims against the signatory and the non-

---

[2] The Court of Appeals' opinion in this case was later reversed in part, because the Supreme Court of Georgia found that the claims against the broker were similarly barred. *McNeal v. Paine, Webber, Jackson & Curtis*, 249 Ga. 662, 664 (2) (293 SE2d 331) (1982).

signatory arise out of interdependent and concerted misconduct by those parties. The court explained:

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. [Cit.] When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[ ] out of and relate[ ] directly to the [written] agreement," and arbitration is appropriate. [Cit.] Second, "application of equitable estoppel is warranted . . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." [Cit.] Otherwise, "the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." [Cit.]

*MS Dealer*, 177 F3d at 947.

The facts in *MS Dealer* are quite similar to those presented in this case. There, a customer bought a car from a car dealer, and in conjunction with that purchase signed a buyer's order containing an arbitration provision. The buyer's order incorporated by reference a retail installment contract. The installment contract included a $990 charge for a service contract that the customer had purchased through MS Dealer. The customer sued MS Dealer, the car dealer, and others, alleging claims for breach of contract, breach of warranty, fraud, and conspiracy. She asserted that the defendants had conspired in a scheme to defraud her into purchasing the MS Dealer service contract for an excessive charge. Id. at 944-945.

The Eleventh Circuit found that the customer's claims arose out of the contract because each claim made reference to and presumed the existence of the $990 charge contained in the installment contract, which was incorporated by reference into the buyer's order containing the arbitration clause. The court concluded that the claims were sufficiently related to the contract even though the customer did not allege that the service contract had been violated or breached in any way. *MS Dealer*, 177 F3d at 947-948. The court also found that the claims against the nonsignatory and the signatory were "based on the same facts" and were "inherently inseparable" because she alleged that MS Dealer worked "hand-in-hand" with the car dealer-

ship to defraud her by charging excessive amounts for the service contract. (Punctuation omitted.) Id. at 948. Thus, the court concluded that the customer was equitably estopped from avoiding arbitration with MS Dealer, even though it was not a signatory to the arbitration agreement. Id.

In a later decision, a separate panel of the Eleventh Circuit appeared to retreat from the position that two independent grounds exist for applying equitable estoppel. The court asserted that allegations of interdependent behavior were not enough standing alone. *In re Humana, Inc. Managed Care Litigation*, 285 F3d 971, 975-976 (11th Cir. 2002). Instead, the court held that the plaintiff's dependence on the underlying contract is the sine qua non of determining whether the application of equitable estoppel is appropriate. Id. at 976. The panel gave no explanation for this change in position, and we note that the *Humana* decision has since been reversed on other grounds. *PacifiCare Health Systems v. Book*, 538 U. S. 401 (123 SC 1531, 155 LE2d 578) (2003).

Nevertheless, the Fifth Circuit has adopted the Eleventh Circuit's original definition of equitable estoppel, noting that it "is applied in order to fulfill federal pro-arbitration policy." *Grigson v. Creative Artists Agency*, 210 F3d 524, 528 (5th Cir. 2000). That circuit found, however, that equitable estoppel is much more readily applicable when both independent bases are present in a particular case. Id.

In *Grigson*, the Fifth Circuit found that a district court correctly applied equitable estoppel to compel arbitration even though the signatory to the arbitration agreement was not a defendant in the action. The complaint in *Grigson* charged the "signatory non-defendant . . . with interdependent and concerted misconduct with a non-signatory defendant." Id. The court found that under such circumstances, the signatory, "in essence, becomes a party, with resulting loss, inter alia, of time and money" because it would be forced to participate in any legal proceedings. Id. It concluded that the ends of equity would be best met by allowing the nonsignatory to compel arbitration. Id. See also *Roberson v. Money Tree of Alabama*, 954 FSupp. 1519, 1529 (M.D. Ala. 1997) (applying equitable estoppel to allow nonsignatory to enforce arbitration agreement although signatories had been released from the lawsuit).

Although this Court has never explicitly applied equitable estoppel under these circumstances, prior decisions applied very similar concepts in allowing a nonsignatory to enforce an agreement. In *Brinson*, for example, we relied upon the fact that the plaintiff's claims all arose directly or indirectly from the contract containing the forum selection clause in allowing the nonsignatory to enforce that clause. This analysis is akin to the first basis articulated by the

Eleventh Circuit for applying equitable estoppel. And in *McNeal*, we considered the effect of separate proceedings on joint tortfeasors, similar to the consideration given by the federal courts to the effect of the proceedings on defendants charged with interdependent claims — the second articulated basis for applying the doctrine. Therefore, we believe that analyzing this case under the equitable estoppel doctrine is in accordance with existing Georgia law.

In doing so, we find that both bases exist for applying the doctrine here. Addressing the second basis first, we note that Arain originally sued both AutoNation and Sutherlin. And the complaint alleges that the two entities worked in concert, Sutherlin acting as AutoNation's agent, to charge exorbitant rates for the TPP, which Arain contends amounted to little more than engraving the car's windshield. One purpose of the scheme was to allow Sutherlin to retain a large portion of the TPP charge. Thus, Arain's claims against Sutherlin and AutoNation "are based on the same facts and are inherently inseparable." (Punctuation omitted.) *MS Dealer*, 177 F3d at 948.

In addition, we find that Arain's claims are sufficiently related to the arbitration contract in this case to justify equitable estoppel. Arain asserts only one cause of action, a RICO claim, and the allegations supporting that claim are tied directly to the installment contract. The complaint asserts that his purchase of the TPP occurred "[i]n the course of" Sutherlin's sale of the car to him; that sale was the primary subject of the installment contract. Further, the gist of Arain's complaint was that the charge for the TPP was excessive in light of the services furnished. That charge was financed through the installment contract, which, in effect, facilitated the TPP purchase by allowing Arain to pay in installments. And Arain is seeking to recover the finance charges he paid under that contract. We find, therefore, that Arain's claim "makes reference to and presumes the existence of" the TPP charge contained in the installment contract and "depends entirely upon [his] contractual obligation to pay" the fee; thus, the second basis for applying equitable estoppel is met. *MS Dealer*, 177 F3d at 947-948.

We note that the Eleventh Circuit found in the *Humana* case that the RICO claim there was not sufficiently related to the arbitration contract, because RICO is a statutory remedy, separate and apart from a breach of contract claim. 285 F3d at 976. Pretermitting the issue of whether this analysis is an accurate application of the equitable estoppel doctrine, we find that the *Humana* case is distinguishable. The court found that the plaintiffs in that case made "no suggestion that the contracts containing arbitration clauses are themselves the product of, or in any way related to, the [defendant's]

conspiratorial behavior." Id. Here, in contrast, we have found that the installment contract is related to the misconduct alleged by Arain.

Further, we find that Arain's dismissal of Sutherlin does not affect AutoNation's ability to enforce the arbitration agreement. As in *Grigson*, the allegations in this case will necessitate that Sutherlin participate in any legal proceeding — in effect, becoming a party and incurring expense. Arain asserts that the cost of this program was excessive, primarily benefitting Sutherlin. The arbitration clause specifically applies to any claims asserted as to charges or costs incurred under the contract. Thus, Sutherlin was entitled to rely upon the arbitration clause to ensure that any such claims would be arbitrated. These circumstances only serve to justify the application of equitable estoppel in this case. *Grigson*, 210 F3d at 528. See also *Roberson*, 954 FSupp. at 1529.

Accordingly, we find that Arain is equitably estopped from asserting that AutoNation cannot enforce the arbitration clause because it did not sign the installment contract, and therefore, the trial court erred in denying AutoNation's motion to compel arbitration on that ground. We note, however, that Arain also opposed the arbitration motion on the ground that the TPP contract was void as an illegal contract to sell insurance. The trial court did not reach that issue and the parties did not brief it before this Court. Thus, we do not address that issue in this appeal.

*Judgment reversed. Andrews, P. J., concurs. Barnes, J., concurs specially.*

BARNES, Judge, concurring specially.

Although I agree with compelling arbitration in this appeal because of the particular circumstances of this case, I must concur in the judgment only because I do not agree that allowing others who are not parties to a contract with an arbitration clause to compel the contracting parties to arbitrate their claims against the third party should be allowed generally.

DECIDED NOVEMBER 20, 2003 —
RECONSIDERATION DENIED DECEMBER 16, 2003.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, Chloe E. Dallaire,* for appellant.

*Morriss, Lober & Dobson, Bruce F. Morriss, Sidney L. Moore, Jr.,* for appellee.