## A03A2067. LANKFORD v. ORKIN EXTERMINATING COMPANY, INC.

(597 SE2d 470)

SMITH, Chief Judge.

The only issue presented in this claim for injuries allegedly caused by a pest control treatment is whether the appellants are required to submit to arbitration as ordered by the trial court. The written contract contains an arbitration clause, but the appellants claim that the arbitration clause should not apply to them or to these claims. We disagree, and we affirm the trial court's judgment.

At the time of events giving rise to this action, Scott and Ashley Lankford and Ashley's mother, Ann Lang, lived together in a "beautiful old house" in Savannah. Ashley Lankford is named on the contract as the customer, and it is signed by "Ann Lang for Ashley Lankford." The one-page contract specifically identifies the pests to be exterminated as "American Cockroaches" and provides for a monthly fee of $32 to cover "one treatment monthly and additional treatments as deemed necessary by Orkin or requested by the Customer." The contract also contains an arbitration clause, which provides that "all disputes between the parties" shall be referred to mediation and arbitration and that "the parties expressly agree that their mutual rights and obligations and the conduct of any arbitration proceeding shall be controlled by the Federal Arbitration Act." Orkin treated the house 11 times between November 12, 1999 and July 21, 2000, and payments were made on a regular basis. Additional treatment was provided on three occasions. The Lankfords acknowledged in their brief below that "Orkin treated the Lankford home and that Ashley Lankford accepted the benefits and paid for those services." Lang signed many of the service tickets, although some are unsigned and one displays a different but illegible signature.

The incident giving rise to this action occurred on July 21, 2000, eight days after the last regular treatment. The Lankfords' neighbor was planning to cut down a tree overhanging the Lankfords' house, and the Lankfords and Lang acknowledge that they requested an additional treatment of their attic to prevent the migration of "palmettobugs" from the tree to the Lankford house. They claim that this treatment caused the house to fill with toxic dust, resulting in serious personal injury to Ashley Lankford and Lang and also extensive property damage. They also claim that cleanup efforts by Rollins, Orkin's parent company, were ineffective and caused additional property damage. Scott Lankford claims loss of consortium.

This action was originally filed by Scott and Ashley Lankford in September 2000 against Orkin and its parent company, Rollins.

Orkin and Rollins filed a motion to stay proceedings and compel arbitration, and in February 2001, the Lankfords dismissed their complaint without prejudice. In May 2002, the action was renewed by the Lankfords, and Lang appeared as an additional plaintiff.[1] Orkin and Rollins again filed a motion to stay and compel arbitration, which the trial court granted. The trial court also granted a certificate for immediate review and this court granted the application for interlocutory review. This appeal followed.

1. In their first enumeration of error, appellants contend that they are not bound by the arbitration clause in the contract because Lang, not Ashley Lankford, signed the contract and did so without authority. They also contend that, if Ashley Lankford ratified the contract, neither Lang nor Scott Lankford was a third-party beneficiary of the contract. The general law provides that a beneficiary need not be specifically named in a contract, so long as the contract shows that it was intended for the third-party's benefit. *Northen v. Tobin*, 262 Ga. App. 339, 344 (2) (b) (585 SE2d 681) (2003). Third-party beneficiaries under the contract "are bound by any valid and enforceable provisions of the contract in seeking to enforce their claims. [Cits.]" *Fidelity & Deposit Co. v. Gainesville Iron Works*, 125 Ga. App. 829, 830 (189 SE2d 130) (1972).

As appellants acknowledged in their brief below, "[t]here is no real dispute that Orkin treated the Lankford home and that Ashley Lankford accepted the benefits and paid for those services." With respect to Lang, she personally accepted and signed for the majority of the treatments over the eight-month course of the contract. Scott Lankford's claim for loss of consortium is entirely dependent upon his wife's claim and stands or falls with it. *Sewell v. Dixie Region Sports Car Club &c.*, 215 Ga. App. 611, 613 (2) (451 SE2d 489) (1994).

The law is plain that by accepting benefits and making payments under the contract, appellants ratified it even if the signature was irregular. *Comvest, L.L.C. v. Corporate Securities Group*, 234 Ga. App. 277, 280-281 (3) (507 SE2d 21) (1998). Appellants attempt to distinguish *Comvest* because it mentions an industry-wide uniform standard of arbitration in the securities industry, but that statement is made in another division dealing not with ratification but with a party's contention that it never received the contract letter. Id. at 279-280 (2). In addition, the Lankfords ratified the contract when they brought their original suit claiming breach of the contract in question. "The relationship of principal and agent arises whenever one person expressly or by implication authorizes another to act for

---

[1] While this was not within the six-month renewal period under OCGA § 9-11-41 (e), it was within the statute of limitation. The incident in question occurred in July 2000.

him or subsequently ratifies the acts of another in his behalf. OCGA § 10-6-1. The institution of a suit by a principal in his own name is a ratification of an agent's unauthorized act. [Cits.]" *Beckworth v. Beckworth*, 255 Ga. 241, 244 (2) (a) (336 SE2d 782) (1985). This enumeration of error is without merit.

2. Appellants also contend that they are not bound by the arbitration clause of the contract because the "specialized treatment" on which they base their claim was not part of the contract. They argue that the July 21, 2000 treatment was not covered by the contract because it was a different treatment intended for "palmettobugs" rather than cockroaches. They also claim there was no mutuality of assent for the price of the additional treatment and that it was an unenforceable oral "agreement to agree."

Appellees deny that the "palmettobug" treatment was outside the scope of the contract, pointing to both an affidavit and an authoritative work in the field of pest control stating that "palmettobug" is merely one of a number of synonyms for "American cockroach." Appellants presented no facts to contradict this assertion. Moreover, the contract provides that service under the contract will "consist[ ] of one treatment monthly and additional treatments as deemed necessary by Orkin or requested by the Customer." It further provides that "Orkin will service the inside of the residence during the month at no additional charge if requested by the customer." An assistant vice president for Orkin testified by affidavit that all applications performed by Orkin are made under a written pest control agreement and that a separate treatment not called for under the existing contract would require a separate written agreement. The pest control service manager for Orkin at the time of the incident identified 12 service tickets generated on visits to appellants' home, and distinguished between tickets for regular treatment, which show an amount paid and a monthly balance corresponding to the monthly fee called for in the contract, and treatments for "call back or follow up" or "complaint" which show no dollar amount and contain an additional notation "N/C" for "no charge." It is undisputed that Orkin did not charge appellants and they did not pay for the treatment complained of.

"The burden is on the party alleging error to show it affirmatively by the record and when the burden is not met, the judgment complained of is assumed to be correct and must be affirmed." (Punctuation omitted.) *Afraknteh v. Halstead*, 259 Ga. App. 645, 646 (578 SE2d 126) (2003). The record shows that "palmettobugs" are simply the American cockroaches called for in the contract by another name, the contract itself provides for additional treatments at the owner's request, appellants requested the additional treatment, and no charge

was assessed for the treatment. It therefore appears undisputed that the treatment was performed under the original contract.

3. Appellants note that Rollins is not a party to the contract. Therefore, they contend, their claims against Rollins for ineffective and negligent cleanup of the pesticide are independent of their claims against Orkin, and Rollins cannot assert the arbitration clause with respect to the claims against it. Appellees respond that appellants' claims against Orkin and Rollins are "inextricably intertwined" because they arise out of the same set of facts: the allegedly negligent pest control treatment applied to appellants' home.

We recently addressed this issue in *AutoNation Financial Svcs. Corp. v. Arain*, 264 Ga. App. 755 (592 SE2d 96) (2003) (physical precedent only). There, as here, a party to a written contract containing an arbitration clause brought an action against both the other party to the contract and a nonsignatory. As here, the arbitration clause invoked the Federal Arbitration Act, and we concluded that "the 'federal substantive law of arbitrability' " applied, holding, "This means that although general state law principles of contract interpretation apply to the contract as a whole, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.' " Id. at 756-757 (2).

In deciding whether a nonsignatory should be bound to an arbitration agreement, we noted that in earlier decisions such as *Comvest*, supra, "this Court has considered a number of other factors in this context, including the status of the parties as joint tortfeasors, the relationship of the claims to the arbitration contract, and the existence of an agency relationship." *AutoNation*, supra at 758 (3). We also looked to the decisions of the federal appeals courts, particularly *MS Dealer Svc. Corp. v. Franklin*, 177 F3d 942 (11th Cir. 1999), for the circumstances under which a nonsignatory may be bound. We noted the federal doctrine of equitable estoppel discussed in *Franklin*, which is applied to compel arbitration of a claim against a nonsignatory "(1) when the claims relate to the contract or (2) when the claims against the signatory and the nonsignatory arise out of interdependent and concerted misconduct by those parties," *AutoNation*, supra at 758-759. We concluded that the finance company involved in an automobile sales and financing agreement could assert the arbitration clause in the dealership's sales contract even though it was not named in the agreement, because the plaintiff originally sued both, the allegations against the two entities were based on the same facts, and the claims were all related to the contract. Id. at 761. One judge on the panel noted that the "particular circumstances of this case" warranted arbitration but concurred specially to note that such claims should not be "generally" allowed. Id. at 762.

While *AutoNation* is not binding precedent, Court of Appeals Rule 33 (a), we find the authorities and reasoning persuasive, and they are applicable to the facts of this case as well. Here, appellants have sued Rollins and Orkin together. They seek to hold Rollins liable for the actions of Orkin under a theory of respondeat superior. Such a claim depends directly upon the underlying facts of appellants' claim against Orkin. Appellants have asserted other claims against Orkin and Rollins jointly. Certainly, the claim against Rollins pertaining to its allegedly negligent cleanup of the Lankford home depends upon some additional facts not alleged against Orkin. But this claim necessarily relies largely on the underlying claims against Orkin for improper treatment of the home, and findings by an arbiter with regard to the original treatment could directly affect appellants' claim against Rollins. The trial court did not err in ordering all appellants' claims to arbitration.

4. In their remaining enumerations of error, appellants contend the grant of the motion violates their constitutional right to trial by jury and that grant of the motion was erroneous because appellees' jury demand was inconsistent with their motion for arbitration. Appellees point out that these claims of error were not raised below. It is axiomatic that matters neither raised nor ruled on below, particularly constitutional questions, may not be considered on appeal. "We do not consider issues raised for the first time on appeal, because the trial court has not had opportunity to consider them." (Citation and punctuation omitted.) *Padilla v. Melendez*, 228 Ga. App. 460, 461 (1) (491 SE2d 905) (1997). While a contention may be raised at oral argument, see *Mitchell v. Hamilton*, 228 Ga. App. 850, 852 (3) (493 SE2d 41) (1997), and "cutting off someone's right to a jury trial" was mentioned in passing by the trial court from the bench, no constitutional contention was either raised by appellants or ruled on by the trial court. "[C]onstitutional issues not raised and ruled on below are not preserved for appeal." (Punctuation and footnote omitted.) *Rahman v. Dalkon Shield Claimants Trust*, 243 Ga. App. 623, 625 (1) (532 SE2d 699) (2000).

*Judgment affirmed. Ruffin, P. J., and Miller, J., concur.*

DECIDED MARCH 12, 2004.

*Doffermyre, Shields, Canfield, Knowles & Devine, Robert E. Shields, Geoffrey E. Pope, Suggs, Kelly & Middleton, Monica B. Patel, William G. Hasty, Jr., Patricia B. Ball*, for appellant.

*Inglesby, Falligant, Horne, Courington & Chisholm, Sam P. Inglesby, Jr., Powell, Goldstein, Frazer & Murphy, Leeann Jones*, for appellee.