A05A0309. PRICE et al. v. ERNST & YOUNG, LLP et al.
(617 SE2d 156)

BARNES, Judge.

After the grant of an interlocutory appeal, Michael F. Price and Educational Holdings, LLC (collectively "Price"), appeal the order of the trial court granting the appellees' motion to stay the proceedings pending arbitration. Price contends the trial court erred by expanding the application of the equitable estoppel doctrine to compel arbitration at the demand of entities who were not parties to the contract. We disagree and affirm.

Michael Price owned Specialty Consultants, Inc., d/b/a E-Train, a company providing online educational training. Later, Price created Educational Holdings, LLC, to sell his Specialty Consultants stock to Pryor Resources, Inc. ("PRI"), which had a similar business. PRI formed Pryor/eTrain Holdings, LLC, to facilitate the sale, which took place in May 2000 through a securities exchange agreement ("SEA"). The SEA was signed by Pryor/eTrain Holdings, LLC; Specialty Consultants, Inc.; Educational Holdings, LLC; and Michael F. Price.

Although he received $4 million up front, a substantial portion of the purchase price was paid to Price in shares of Pryor/eTrain stock.

Later, however, Pryor/eTrain filed for bankruptcy and, as Pryor/eTrain was liquidated, Price alleges he lost more than $16 million as a result.

Price filed the underlying action against Ernst & Young, LLP, the accounting firm that had audited PRI before the sale, and the principals and owners of PRI and Pryor/eTrain, Thayer/Patricof Education Funding, LLC, and its parent company Thayer/Patricof Education Holdings, LLC, which owned a controlling interest in PRI; Christopher Temple, who was a director of Pryor Holdings, Inc., the parent company of PRI, and a vice president of Thayer Capital Partners, a venture capital firm; George Jenkins, a director of Pryor Holdings and PRI and a partner in Patricof & Company Ventures, a venture capital firm; Philip R. Love, the president, chief executive officer, and a director of PRI; Michael B. Hays, the chief operating officer of PRI; and David Allard, the chief financial officer of PRI and a former employee of Thayer Capital Partners. Pryor/eTrain Holdings LLC, however, is not a named defendant in the action.

In his brief, Price described his claims and the relationship of the parties as follows:

> Appellants brought fraud and negligent misrepresentation claims against Appellees, in their individual capacities, for inducing Michael Price ("Price") to sell his company to Pryor/eTrain Holdings, LLC ("Pryor/eTrain"). Appellant Educational Holdings, LLC ("EH") held Price's minority interest in Pryor/eTrain. Appellee Ernst & Young ("E&Y") was the auditor for Pryor Resources, Inc. ("PRI"). PRI was the predecessor to Pryor/eTrain. The remaining Appellees ("Non E&Y Appellees") were PRI's owners and officers. EH brought a fiduciary duty claim against the Thayer/Patricof Appellees and a gross negligence claim against Appellees Temple, Jenkins, and Love based on the mismanagement of Pryor/eTrain after the acquisition.

The gist of Price's complaint is that he was deceived about PRI's financial condition, and as a result he agreed to a financially disastrous transaction. Price sought compensatory damages of no less than $16 million, punitive damages, attorney fees, expenses and costs under OCGA § 13-6-11, and pre- and post-judgment interest.

All the defendants answered, and relying upon an arbitration clause in the SEA, all the defendants filed motions to stay or dismiss Price's action pending arbitration.

The SEA contains the following arbitration clause:

> The parties to this Agreement each hereby agree to submit any claim, demand, action or cause of action arising under

this agreement in each case whether now existing or hereafter arising, and whether in contract, tort, equity, or otherwise, to arbitration in Kansas City, Kansas, in accordance with the commercial arbitration rules of the American Arbitration Association.

The superior court stayed the action pending arbitration. Relying upon *AutoNation Financial Svcs. Corp. v. Arain*, 264 Ga. App. 755, 761-762 (592 SE2d 96) (2003) (physical precedent only), the trial court found that Price was equitably estopped from denying that the arbitration clause applied to his claims because his claims presumed the existence of the SEA and each count of his complaint referred to the transaction or the SEA. Moreover, the trial court found that the arbitration agreement was not limited to the signatories of the SEA.

On appeal, Price's sole enumeration of error is that the "trial court erred in its expansive application of the equitable estoppel doctrine and *AutoNation* by granting motions to compel arbitration by nonsignatories to the SEA." "The standard of review from the grant of a motion to compel arbitration is whether the trial court was correct as a matter of law. In addition, the construction of a contract is a question of law for the court that is subject to de novo review." (Citations and punctuation omitted.) *Krut v. Whitecap Housing Group, LLC*, 268 Ga. App. 436, 441 (2) (602 SE2d 201) (2004).

1. Price first argues that the trial court erred by staying the case pending arbitration because the arbitration clause in the SEA requires only the parties to the agreement to submit their claims to arbitration and as the defendants are not parties to the agreement, they may not invoke the clause. The appellees contend, however, that the trial court correctly applied the doctrine of equitable estoppel because, contrary to Price's allegations, all of the claims against them arise out of and directly relate to the SEA. They point to the fact that Price's complaint refers to the transaction effected by the SEA over 40 times. For example, Counts 2 and 3 of the complaint allege that the appellees fraudulently induced Price to enter into the SEA. Count 4 alleges that certain appellees breached their fiduciary duties by mismanaging Pryor/eTrain, and Count 5 alleges other appellees mismanaged Pryor/eTrain. Additionally, Price's outline of his claims and the relationship of the parties, discussed above, further demonstrate the connection between his claims and the SEA.

The appellees further contend that Price's argument that the terms of the arbitration clause limit its applicability to claims between the parties is contrary to the clause itself and contrary to controlling law. We note that the clause in question does not restrict its application to the parties thereto, but states that the parties

thereby agreed "to submit any claim, demand, action, or cause of action arising under this agreement in each case whether now existing or hereafter arising, and whether in contract, tort, equity, or otherwise, to arbitration. . . ." Accordingly, we find that Price's argument that this provision is limited to parties is not supported by the agreement itself.

Therefore, we find that the appellees can compel arbitration if Price's claims arise under the SEA.

2. Price also contends that the clause only requires the arbitration of causes of action "arising under" the agreement, and that his claims do not arise under the agreement because the alleged wrongful conduct is independent of the terms of the contract and the signatories' obligations under it. Therefore, he asserts that arbitration cannot be compelled. We find it significant that the first paragraph of Price's complaint asserts that "[t]his lawsuit arises out of Price's sale of his stock in Specialty Consultants, Inc.," and that the defendants "made materially false, misleading, and negligent representations and failed to disclose material facts to induce Price to enter into the Acquisition Transaction." As the SEA is the document that consummates the "Acquisition Transaction," we find this statement an admission that his suit "arises under" the SEA.

The arbitration clause requires the parties to arbitrate causes of action "arising under" the agreement "whether now existing or hereafter arising, and whether in contract, tort, equity, or otherwise." As Price's claims unquestionably fall within the scope of a cause of action "now existing or hereafter arising, and whether in contract, tort, equity, or otherwise," the only remaining question is whether the cause of action arises under the SEA. "Arise" has been defined as "[t]o spring up, originate, to come into being or notice, to become operative, sensible, visible, or audible; to present itself," Black's Law Dictionary (6th ed. 1990), and as "[to] come into being; originate, [t]o result, issue, or proceed." The American Heritage Dictionary (2nd College ed. 1982).[1] Considering the many references in Price's complaint to the SEA and its reliance upon the SEA, we find that his complaint arises under the SEA. In this regard, we find that

> equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims

---

[1] Unambiguous terms are taken in their plain, ordinary and popular sense as supplied by dictionaries. *Southern Guaranty Ins. Co. v. Duncan*, 131 Ga. App. 761, 764 (206 SE2d 672) (1974).

against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. [Also], application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

(Citations and punctuation omitted.) *MS Dealer Svc. Corp. v. Franklin*, 177 F3d 942, 947 (11th Cir. 1999).

Our recent opinion in *LaSonde v. CitiFinancial Mtg. Co.*, 273 Ga. App. 113 (614 SE2d 224) (2005), relied upon *MS Dealer Svc. Corp. v. Franklin* in holding that by applying the doctrine of equitable estoppel a signatory defendant could compel a nonsignatory plaintiff to arbitrate her claims because her claims related "directly to — or presume the existence of — the promissory note that incorporates the arbitration agreement." Thus, we held that the claims of the signatory and nonsignatory plaintiffs were "so intertwined — and so dependent upon a contract containing an arbitration clause — that [the nonsignatory plaintiff was] estopped from avoiding arbitration." Id. at 115.

Moreover, even though *AutoNation Financial Svcs. Corp. v. Arain*, supra, 264 Ga. App. at 761, was physical precedent only when it was issued,[2] since that time it has been cited with approval in *LaSonde v. CitiFinancial Mtg. Co.*, supra, and found persuasive and relied upon in *Lankford v. Orkin Exterminating Co.*, 266 Ga. App. 228, 231 (3) (597 SE2d 470) (2004). In *Lankford*, relying on *AutoNation*, we looked to the relationship of the claims to the arbitration contract and the status of the parties and whether the claims against the signatory and nonsignatory arose from interdependent and concerted action. Therefore, while the *AutoNation* opinion itself is only nonbinding precedent, the principles stated therein may appropriately be considered in this appeal.

Therefore, we find that the trial court did not err by finding that Price was equitably estopped from denying that the arbitration clause applied to his claims and thus staying the proceeding so that his claims could be submitted to arbitration. *LaSonde v. CitiFinancial*

---

[2] The author of this opinion was also the author of the special concurrence in *AutoNation*. The concerns expressed in that opinion were directed to compelling arbitration by a nonsignatory in a consumer transaction and not to arbitration clauses in business contracts involving parties of equal bargaining power represented by knowledgeable attorneys.

*Mtg. Co.*, supra; *Lankford v. Orkin Exterminating Co.*, supra, 266 Ga. App. at 232; *AutoNation Financial Svcs. Corp. v. Arain*, supra, 264 Ga. App. at 762.

*Judgment affirmed. Ruffin, C. J., and Johnson, P. J., concur.*

DECIDED JULY 6, 2005 — 

*Krevolin & Horst, Jeffrey D. Horst, David A. Sirna,* for appellants.

*Hunton & Williams, Jerry B. Blackstock, Matthew J. Calvert, Ashley F. Cummings, Ann M. DePriester, Sutherland, Asbill & Brennan, Elizabeth V. Tanis, Melanie W. Crowe, Smith Moore, Edward M. Newsom, Alycen A. Moss, Nelson, Mullins, Riley & Scarborough, Kenneth L. Millwood,* for appellees.