A04A0474, A04A0475. MARETT et al. v. BRICE BUILDING COMPANY, INC.; and vice versa.
(603 SE2d 40)

BARNES, Judge.

Jean and William Marett appeal the trial court's grant of summary judgment to Brice Building Company, Inc. against them on Brice's complaint for quantum meruit. Brice appeals the trial court's denial of summary judgment on its claims for breach of contract and on account. For the reasons that follow, we affirm.

The Maretts are the sole members of Marett Properties, LLC. Marett Properties hired Brice to work on two commercial real estate projects, the USA Floral Project, which began in March 2000 and the Advance Medical Project, which began in June 2000. After the work began, both Jean and William Marett signed guaranties agreeing to be personally liable for Marett Properties' debt to Brice, but did not sign the contracts Brice submitted. Meanwhile, the parties who had anticipated leasing or buying these commercial properties once they were completed were unable to obtain financing. On August 30, 2000, Brice stopped working on the projects because Marett never paid them anything, and the parties communicated back and forth for months about payment of the invoices.

Brice eventually sued Marett Properties, Jean Marett, and William Marett for quantum meruit, breach of contract, and on account for the value of the work it did on both properties. The Maretts answered, and after discovery, Brice moved for summary judgment on all counts. Its vice president swore that Brice performed work valued at $225,585 on one project, and $112,215 on the other. The trial court granted summary judgment against all three defendants for $337,800 plus pre-judgment interest on the quantum meruit counts, and denied summary judgment on the claims for breach of contract and on account.

1. Marett Properties did not appeal the grant of summary judgment against it on the quantum meruit count, and Jean and William Marett do not contest the judgment amount. Instead, they argue that the trial court erred in finding them personally liable for the judgment.

On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Preferred Real Estate Equities v. Housing Systems*, 248 Ga. App. 745 (548 SE2d 646) (2001).

Jean Marett asserts that the trial court erred in finding her personally liable for the value of Brice's work on the Advanced Medical Project. The trial court found that Jean Marett owned the real property involved, accepted Brice's work on the project, and benefitted from that work. Marett does not dispute that Brice worked on the project and she owned the property, but contends that an issue of fact exists as to whether she knowingly accepted Brice's services so that a promise to pay Brice can be implied.

OCGA § 9-2-7 provides that "[o]rdinarily, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof."

> In order to recover under a quantum meruit theory, claimant must show (1) his performance as agent of services valuable to the defendants; (2) either at the request of the defendants or knowingly accepted by the defendants; (3) the defendants' receipt of which without compensating claimant would be unjust; (4) and claimant's expectation of compensation at the time of the rendition of the services.

(Citations and punctuation omitted.) *Artrac Corp. v. Austin Kelley Advertising*, 197 Ga. App. 772, 777 (5) (399 SE2d 529) (1990).

Jean Marett argues that she was not involved directly in the day-to-day business of Marett Properties, and that therefore Brice could not show that she knowingly accepted Brice's work on the Advanced Medical Project. But Jean Marett owned the property, and signed a personal guaranty agreeing to pay Brice for the work done under the contract that all parties anticipated would be signed shortly. She attended Marett Properties staff meetings at which progress on the Advanced Medical Project was discussed. Her argument that she did not know Brice was working on her property despite her having promised to pay does not create an issue of fact,

and we find no error in the trial court's grant of summary judgment against Jean Marett personally for the Advanced Medical Project.

2. Jean and William Marett contend that the trial court erred in construing their personal guaranties to cover the quantum meruit debt, arguing that the guaranties only covered contractual obligations by Marett Properties to Brice, and because Marett Properties never signed a contract, Jean and William Marett are not personally liable.

> A contract of guaranty is primarily one to pay the debt of another which may be due and payable by the principal debtor to the creditor upon default. In construing guaranties, they are to be taken as strongly against the party giving the guarantee, as the sense of them will admit. Thus, as a general rule, if the construction is doubtful, that which goes most strongly against the party undertaking the obligation is generally to be preferred.

(Citations and punctuation omitted.) *Town Center Assoc. v. Workman*, 227 Ga. App. 55, 58 (1) (487 SE2d 624) (1997).

The guaranty agreements for the two projects begin:

> As an inducement to Brice Building Company, Inc., (hereinafter referred to as "Contractor") to enter into the Advanced Medical Associates (referred to as the "Contract") with Marett Properties, LLC (hereinafter referred to as "Owner"), and in consideration of Contractor entering into said Contract, the Undersigned, W. W. Marett, Jr. and Jean S. Marett, . . . do hereby irrevocably and unconditionally guarantee to Contractor the full and timely performance of all of the terms, promises and covenants set forth in said Contract.

The guaranty for the USA Floral project mirrors the Advanced Medical guaranty. Brice relies on a later paragraph in the documents, which provides that the

> Guaranty Agreement shall remain fully enforceable against the Undersigned for the full amount of *any obligations* of the Owner to the Contractor less only payments thereon actually received and retained by Contractor, irrespective of and without reduction on account of (i) *any defense*, offset, or counterclaim which Owner may have or assert with respect to any of such obligations.

(Emphasis supplied.)

"[C]ontracts of suretyship and guaranty are indistinguishable." *Arnold v. Indcon, L.P.*, 219 Ga. App. 813 (1) (466 SE2d 684) (1996).

> A contract of suretyship must be strictly construed in the interest of the surety. A surety's liability will not be extended beyond by implication or interpretation. The undertaking of a surety being stricti-juris, he cannot, in law or equity, be bound further than the very terms of his contract. There is no construction required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation.

(Citations and punctuation omitted.) *Avec Corp. v. Schmidt*, 207 Ga. App. 374, 375-376 (427 SE2d 850) (1993). In this case, the Maretts argue that the guaranties do not cover obligations under quantum meruit, but only obligations under the contracts between Brice and Marett Properties, which William Marett never signed. We need not decide this issue, however, because, as discussed below, we conclude that the parties did enter into a contract; therefore, the personal guaranties are enforceable against the Maretts.

3. In its cross-appeal, Brice asserts that the trial court erred in denying its motion for summary judgment on its claim for breach of contract. "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." OCGA § 13-3-1. "Parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract, or the acceptance by one of the performance by the other." (Punctuation and footnote omitted.) *Comvest, LLC v. Corporate Securities Group*, 234 Ga. App. 277, 280-281 (3) (507 SE2d 21) (1998). A signature is not required to form a contract if the parties agree on all material terms. *Legg v. Stovall Tire & Marine*, 245 Ga. App. 594, 596 (538 SE2d 489) (2000).

In support of its argument that the parties reached an agreement, Brice's vice president of commercial and institutional construction, Bobby Shoulders, testified that the parties worked on the USA Floral project for four or five months before finalizing the scope and terms of the project. Shoulders worked directly with Terry Honan, who William Marett designated as the owner's representative, with the authority to make whatever decisions were necessary. The parties agreed to a "design-build" contract, under which the architects and engineers work for the general contractor, who pays them and in turn bills the owner for their services. The parties agree on a maximum total price, and share the savings if the project is completed under

budget. If they go over budget, it comes out of the contractor's pocket. At a meeting, Shoulders and Honan agreed on the primary terms of the deal, leaving only minor architectural and design choices to be decided as the project progressed. Because the financing was not yet in place, Brice asked for personal guaranties from the Maretts.

At the end of the meeting, Honan told Shoulders to put the terms they had agreed to in written form and send it to Marett for a signature. Honan said, "We're good to go." Shoulders prepared the contract and guaranties about a month after the meeting, strictly for confirmation of the deal they had already agreed to. The Maretts returned the guaranties, but not the contract. Meanwhile, Brice had obtained a grading permit and was clearing, grading, and filling the site. After Brice stopped work at the end of August, Shoulders asked Marett if he had signed the contract. He said he could not find it, so Shoulders sent him a second copy.

The process for the Advanced Medical project was similar, and began after Brice was already working on USA Floral. In general, the terms were exactly the same as the previous contract, "the AIA contract cost plus the GNP, standard information, and work up a budget based on that." Shoulders worked up a budget, faxed it to Honan, and understood from Honan's return call that they had a deal. Brice hired subcontractors who began working on the project, which was to remodel a former church for a medical practice, but stopped working when Brice did not get paid. Shoulder sent the written contract to Marett, who never signed it or gave a substantive reason why he did not do so.

Honan was a project director and physical engineer who was employed full-time by Brice. He knew William Marett through their church committee which oversaw the building of a new church shortly before the USA Floral project began. Brice was the general contractor for the church project. Marett had extra office space and Honan began assisting with some Marett Properties projects with the understanding that he would be paid a percentage of the profits. He worked on the USA Floral project, setting up meetings between Brice and Marett's prospective tenants to finalize the design requirements. After basic construction drawings were completed, Brice prepared a fully detailed estimated budget. In reviewing the budget, which closely matched his own budget, William Marett's only comment was to question whether the building front would be bricked or not, and he decided that if the county required it, it would be added. Marett then approved the budget, the parties agreed on price, time, and the form of the contract, and Honan authorized Brice to proceed. Brice expressed concern over the project's funding and Marett offered his and his wife's personal guaranty.

As to the Advanced Medical project, Honan testified about the process, which was similar to USA Floral. This was not a Marett Properties project, because the property belonged to Jean Marett personally. After meeting with the prospective tenants, Brice hired an architect to produce drawings from which it prepared a budget proposal. William Marett reviewed and revised the budget, and Brice prepared a final budget, which Marett subsequently approved. Because the tenants wanted to move in very soon, Marett wanted Brice to begin work immediately, and again offered personal guaranties to alleviate Brice's financing concerns. The written contract Brice prepared mirrored the parties' verbal agreements, except that Brice agreed to change the cost savings split from 50-50 to 80-20 in Marett's favor. Brice began interior demolition on the building, had begun to build the interior partitions, and completed some of the electrical rough-in when the company stopped work on the project because it did not get paid.

Marett's deposition testimony reveals that he did not remember many details of the two projects. He did not remember the total amount on the Advanced Medical project. He had no opinion about the amount Marett Properties owed Brice for the work they had done, and did not know how long Brice was on either site. The value of the work on the Advanced Medical project was unknown. He did not recognize or recall the Engineering and Construction Reports that Honan prepared and delivered at staff meetings, which outlined the progress on both projects. He did not recall any specific conversations about the Advanced Medical project with Honan. When asked if there were any agreements, in writing or not, between Brice and Marett, he responded, "There may be. I cannot give you a specific answer to that. I don't recall what agreements there might be, what understandings there might be. I can't — I can't give you a specific answer to that question." He did recall that he never signed the written contracts, and he contended that the parties did not finalize all the contract details.

Marett confirmed that Honan had been working for him while employed by Brice, and handled many details of the two projects. He was responsible for cost and profit estimating. Honan had no authority to hire contractors without Marett's specific okay, and Marett did not remember if he gave Honan that authority. He did not know if he defined Honan's authority in writing, but "we had an understanding that nobody spent over $500 on anything without [Marett's] written approval." He did not recall what Brice was authorized to do, although he insisted Brice was not authorized to begin work on the Advanced Medical project. When asked about a letter he sent to Brice after Brice stopped work, in which Marett said he would let Brice know by Tuesday when a lender expected "to fund us and pay you and

keep you current," he responded first that he did not know what he meant by that, then explained he was supposed to get a loan to fund the project, which he could use to pay Brice "for whatever contract we were trying to wind up." When asked about a subsequent letter in which he stated that he expected to have funds available to pay Brice "part of what you expended until we make full payment," he again said he did not know what that meant.

Having reviewed de novo all the evidence in this case, no genuine issues of material fact remain. While William Marett cannot remember much of the events surrounding these two projects, Honan, who acted as Marett's agent, remembered them clearly, as did Brice's vice president. According to them, the parties negotiated and agreed on the contract terms, including price, time, and the form of the contract, and Marett Properties authorized Brice to proceed. Given these facts, the parties entered into an enforceable contract. While Brice must elect to proceed on either quantum meruit or under the contract, the fact that a contract existed means that the Maretts' personal guaranties are valid. "A summary judgment right for any reason will be affirmed." (Footnote omitted.) *Kaylor v. Atwell*, 251 Ga. App. 270, 272 (2) (553 SE2d 868) (2001). Therefore, the trial court did not err in granting summary judgment to Brice against Jean and William Marett personally.

4. Brice's remaining enumeration of error, that the trial court erred in denying it summary judgment on its claim on account stated, is moot.

*Judgments affirmed in Case Nos. A04A0474 and A04A0475. Ruffin, P. J., and Mikell, J., concur. Blackburn, P. J., not participating.*

DECIDED JULY 9, 2004 —
RECONSIDERATION DENIED JULY 28, 2004 —

*Anthony J. Solari III*, for appellants.
*Burr & Forman, John O. Sullivan, William C. Collins, Jr.,* for appellee.