**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 12, 2025**

# In the Court of Appeals of Georgia

A24A1797. BURKE MOORE LAW GROUP, LLP v. DREW ECKL
& FARNHAM, LLP

A24A1798. DREW ECKL & FARNHAM, LLP v. BURKE MOORE
LAW GROUP, LLP.

BARNES, Presiding Judge.

These appeals arise out of a dispute between Drew, Eckl & Farnham, LLP ("DEF" or "the firm") and two of its former partners, Paul Burke and Brian Moore. That dispute, which is currently pending before the American Arbitration Association ("AAA"), concerns certain contingency fees received by Burke and Moore that the firm claims it was owed under the DEF Partnership Agreement. After the arbitration panel granted DEF's motion to add Burke Moore Law Group, LLP ("BMLG") as a party to the arbitration, BMLG filed suit in superior court seeking, inter alia, a declaration that it had no obligations under the DEF Partnership Agreement and could

not be required to participate in the arbitration. BMLG moved for summary judgment on its claim for declaratory relief, and the trial court denied that motion and compelled BMLG to arbitrate.

After this Court granted BMLG's application for an interlocutory appeal, BMLG filed the appeal in Case No. A24A1797, asserting that the trial court erred in holding that equitable estoppel barred BMLG's objection to being joined as a party to the arbitration; in denying BMLG's motion for partial summary judgment; and in finding that BMLG voluntarily submitted to the arbitration panel the threshold question of whether DEF's claims against it were arbitrable. DEF filed a cross-appeal in Case No. A24A1798, arguing that while the trial court reached the correct result, it erred as a matter of law in conducting a de novo review of the arbitrator's decision. Instead, DEF claims that relevant law required the court to find that BMLG was bound by the arbitrators' decision.

For reasons explained more fully below, we find that the trial court committed legal error in holding that the doctrine of equitable estoppel required BMLG to arbitrate DEF's claims against it. Accordingly, in Case No. A24A1797, we vacate that part of the trial court's order and remand the case for further proceedings consistent

with this opinion. We further find that the trial court had the authority to review the arbitrators' decision de novo and therefore conclude that the appeal in Case No. A24A1798 is without merit.

"Similar to our review of the grant of summary judgment, which involves the elimination of all genuine issues of material fact, the standard of review from the grant of a motion to compel arbitration is whether the trial court was correct as a matter of law." (Citation and punctuation omitted.) *Losey v. Prieto*, 320 Ga. App. 390, 390 (739 SE2d 834) (2013). See also *Brooks v. Brooks*, 366 Ga. App. 650, 650 (883 SE2d 880) (2023) (an appellate court reviews de novo a trial court's order requiring a party to submit to arbitration); *Webb IV, LLC v. Samples Constr., LLC*, 349 Ga. App. 607, 607 (824 SE2d 107) (2019) ("[T]he construction of an arbitration agreement, like any other contract, presents a question of law, which is subject to de novo review.") (citation and punctuation omitted); *Bryant v. Optima Intl.*, 339 Ga. App. 696, 696 (792 SE2d 489) (2016) ("In reviewing a grant or denial of summary judgment, we owe no deference to the trial court's ruling and we review de novo both the evidence and the trial court's legal conclusions.") (citation and punctuation omitted).

Here, the relevant facts appear to be undisputed and show that for many years, Burke and Moore were equity partners at DEF, where they engaged in a commercial collections practice. Burke and Moore handled these collections matters on a contingency-fee basis. In February 2022, Burke and Moore notified DEF of their intent to resign from the partnership. They then began the process of forming BMLG with Burke, Moore, and four other attorneys as equity partners.[1]

At the time Burke and Moore resigned from the firm, they were signatories to the DEF Partnership Agreement. Article XVIII of the Partnership Agreement provided, in relevant part:

> If payment for services in any matter handled for any client who elects to continue an attorney/client relationship with a departing Partner is contingent upon results, the departing Partner shall be obligated to immediately pay the Firm for one-third (1/3) of any contingency fee when the contingency fee is received by the departing Partner, together with all client reimbursable expenses incurred as of the effective date of withdrawal.

---

[1] None of the other attorneys who joined BMLG as equity partners were members of DEF.

Article XXIV of the Partnership Agreement addressed the resolution of any disputes between the firm and a departing partner. Specifically, that provision stated,

> [a]ny dispute between the Partnership and a . . . withdrawing Equity Partner . . . regarding their respective rights and liabilities under this Partnership Agreement shall be submitted to the American Arbitration Association or other mutually agreeable arbitrators for binding arbitration and resolution.

After they provided notice to DEF, Burke, Moore, and the firm entered into negotiations about the terms of Burke and Moore's departure. Those negotiations culminated in a written "Statement of Agreement" (the "Transition Agreement"). The Transition Agreement states that it was "made . . . by and among the following parties: Drew, Eckl & Farnham, LLC ("DEF") and two partners of DEF, Paul Burke and Brian Moore." The agreement further provides that Burke and Moore and/or "BMLG[,] as needed," would assume all ongoing obligations, including leases, contracts, and licenses that were entered into, incurred, or acquired, to support Burke and Moore's commercial collections practice. Additionally, the Transition Agreement states, in relevant part:

14. Paul Burke and Brian Moore will cooperate reasonably with DEF to provide meaningful access to complete and accurate information regarding the current status of all contingency fee matters assigned to DEF through the effective date of their withdrawal, . . . .

15. This agreement shall have no impact on any term of the DEF Partnership Agreement . . . including but not limited to the provisions regarding contingency fee arrangements contained in Article XVIII of the Partnership Agreement.

The Transition Agreement was executed by the parties' respective attorneys, with those signatures appearing underneath the following statement: "Undersigned attorneys for the parties are fully vested to bind each party to the terms of this agreement this 30th day of March, 2022." The first signatory is identified as "Attorney for Paul Burke, Brian Moore, and Burke Moore Law Group."

Following execution of the Transition Agreement, DEF sent a letter to all collections clients, informing them of Burke and Moore's decision to leave the firm. The letters further informed the clients that following the departure of Burke and Moore, DEF would "no longer have the capacity to handle" their cases. Therefore, the clients were instructed to inform DEF of the outside lawyer or firm to which their

files should be transferred. A number of clients ultimately transferred their cases to BMLG.

Burke's and Moore's withdrawal from DEF became effective on April 30, 2022. In October 2022, DEF filed an arbitration demand and statement of claim against Burke and Moore with the AAA. DEF asserted claims for breach of contract and breach of fiduciary duty, conversion, money had and received, and unjust enrichment. Each of these claims was premised on Burke's and Moore's alleged refusal to pay DEF certain contingency fees the firm alleged it was owed pursuant to the Partnership Agreement. Burke and Moore filed a counterclaim against DEF, alleging that the firm had breached the Partnership Agreement with respect to the compensation it paid them. They also named as counterclaim defendants the members of DEF's compensation committee, asserting claims against them for breach of fiduciary duty and unjust enrichment.

In April 2023, DEF moved to add BMLG as a party to the arbitration. The motion alleged that Burke and Moore had transferred their rights and interests in the contingency fee cases (subject to DEF's interest) to BMLG; that as a result of this transfer, DEF had claims against BMLG for money had and received, conversion, and

unjust enrichment; and that BMLG might also be liable "as the successor-in-interest and/or alter-ego of Burke and Moore." DEF further claimed that BMLG could be made a party to the arbitration because its claims against BMLG were significantly intertwined with the firm's claims against Burke and Moore. Additionally, DEF asserted that BMLG was a party to the Transition Agreement, which in turn incorporated the DEF Partnership Agreement. Thus, DEF claimed that by entering the Transition Agreement, BMLG agreed that the DEF Partnership Agreement would govern the resolution of issues related to the payment of contingency fees.

BMLG, Burke, and Moore filed a joint response and objection to DEF's motion. The arbitration panel granted the motion and ordered that BMLG be added as a party. In support of its decision, the panel found that BMLG had "agreed" to the Transition Agreement, which incorporated by reference the DEF Partnership Agreement. The Partnership Agreement, in turn, provided that disputes over contingency fees would be settled by arbitration. The panel further noted that there was "privity and an identity of interest between [Burke and Moore] and BMLG" and that "BMLG presumably accepted the [c]ontingency [c]ases with express knowledge that any dispute between [DEF] and [Burke and Moore] over any money due to [DEF]

for the contingency cases was to be resolved by arbitration and, therefore, took the [c]ontingency [c]ases subject to that same obligation."

BMLG, Burke, and Moore moved for reconsideration of the arbitrators' decision, and the panel denied that motion. BMLG then filed the current lawsuit, seeking a declaratory judgment that it had no obligations under the DEF Partnership Agreement and that it should not be required to arbitrate DEF's claims against it. BMLG also sought injunctive relief and a stay of the arbitration proceedings as they related to it. DEF filed an answer and counterclaim seeking a confirmation of the arbitration panel's decision adding BMLG as a party; a declaratory judgment that BMLG took the contingency cases subject to DEF's rights; breach of contract; conversion; money had and received; and unjust enrichment.

BMLG filed a motion for partial summary judgment on its claim for a declaratory judgment that it should not be added as a party to the arbitration and on DEF's counterclaim seeking confirmation of the arbitrators' decision. DEF subsequently filed a motion seeking an order confirming the arbitration panel's decision. The trial court denied both of the motions, but ultimately compelled BMLG to arbitrate.

The court concluded that because the arbitrators' decision was interlocutory, the court could not grant DEF's request to confirm that decision as an "arbitration award." With respect to BMLG's summary judgment motion, the court first found that there was no "clear and unmistakable evidence" that BMLG agreed to have the question of arbitrability decided by the arbitrators, and therefore the court had to review that question de novo. The court then concluded that BMLG was subject to arbitration under the doctrine of equitable estoppel because: (1) it "participated in substantially interdependent and concerted conduct" with Burke and Moore when it "accepted [DEF's] contingency cases with the knowledge that any dispute over them is to be resolved by arbitration"; and (2) DEF's claim for recovering "the contingency fees against [BMLG] is based on the same operative facts and [is] inherently inseparable from the claims against" Burke and Moore. Relying on these conclusions, the court denied BMLG's motion for partial summary judgment and compelled it to participate in the arbitration (which, the court acknowledged, was the same "overall relief" sought by DEF in its motion to confirm the arbitrators' decision).

Following entry of the trial court's order, BMLG sought a certificate of immediate review, which the court granted. This Court subsequently granted BMLG's application for an interlocutory appeal, and these appeals followed.

*Case No. A24A1797*

1. In its first enumeration of error, BMLG asserts that the trial court committed legal error by relying on the doctrine of equitable estoppel to compel it to arbitrate the claims at issue. We agree.

"As a general rule, only those signatories to an arbitration agreement may be compelled to arbitrate." (Citation and punctuation omitted.) *SCSJ Enterprises v. Hansen & Hansen Enterprises*, 319 Ga. App. 210, 213 (2) (a) (734 SE2d 214) (2012) (physical precedent only). See also *Wedemeyer v. Gulfstream Aerospace Corp.*, 324 Ga. App. 47, 49 (1) (749 SE2d 241) (2013) ("[a]rbitration is a matter of consent, not coercion") (citation and punctuation omitted); *Helms v. Franklin Builders*, 305 Ga. App. 863, 865 (700 SE2d 609) (2010) (a party "who has not consented to an arbitration agreement cannot be compelled to arbitrate claims"). Here, the trial court acknowledged that the arbitration agreement at issue is contained in the DEF Partnership Agreement and that BMLG was not a signatory to that agreement.

11

Nevertheless, the court relied on a line of state and federal cases holding that, under certain circumstances, the doctrine "of equitable estoppel provides a means of bringing a non-signatory within the terms of an arbitration agreement." *Helms*, 305 Ga. App. at 866. As a general rule, courts have applied the doctrine of equitable estoppel where a non-signatory who had been sued under the contract containing the arbitration agreement sought to require the plaintiff, who was a signatory to that agreement, to abide by the same. As we have explained:

> *[N]on-signatories to an agreement* may have a right to compel arbitration under the doctrine of equitable estoppel, which applies under two circumstances . . . . First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory. . . . Second, application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract.

(Citation and punctuation omitted; emphasis supplied). *Order Homes LLC v. Iverson*, 300 Ga. App. 332, 338-339 (2) (685 SE2d 304) (2009). See also *Usme v. CMI Leisure Mgmt.*, 106 F4th 1079, 1087-1088 (III) (B) (11th Cir. 2024) (noting that under limited circumstances, "[e]quitable estoppel allows *a non-party*" to a contract containing an

arbitration agreement "to enforce the [arbitration] provisions of [that] contract *against a signatory*") (emphasis supplied); *Kroma Makeup EU, LLC v. Boldface Licensing + Branding*, 845 F3d 1351, 1354 (II) (11th Cir. 2017) (under the doctrine of equitable estoppel, "a defendant who is a non-signatory to an agreement containing an arbitration clause can force arbitration of a signatory's claims when the signatory must rely on the terms of the written agreement in asserting its claims against the non-signatory") (citation and punctuation omitted) (applying Florida law).

By way of example, the plaintiffs in *Order Homes* had entered into a new construction purchase-and-sale agreement with Order Homes which contained an arbitration clause. 300 Ga. App. at 333. Shortly after closing on their purchase and moving into the home, the plaintiffs filed suit against Order Homes and 13 other defendants claiming that, as a result of construction defects, the home was uninhabitable. Id. at 333-334. Order Homes and four other named defendants (none of whom were signatories to the purchase-and-sale agreement) filed a motion to compel arbitration. Id. at 334. The trial court denied the motion as to the four non-signatory defendants, and they appealed. Id. This Court reversed, finding that the claims at issue "ar[o]se out of and relate[d] directly to" the purchase-and-sale

agreement and that the claims against all defendants alleged "substantially interdependent and concerted misconduct by both the non-signatory defendants and one of the signatories to the agreement." (Citation and punctuation omitted.) Id. at 339 (2). Thus, we concluded that the non-signatory defendants could rely on the doctrine of equitable estoppel to require the plaintiffs to arbitrate their claims against those defendants. Id. Specifically, we noted that equitable estoppel was applicable because the plaintiffs were "attempting to sue non-signatories for claims arising out of the [a]greement on one hand, while avoiding the arbitration clause pertaining to those same claims on the other hand." Id.

We have applied similar reasoning in a number of cases to conclude that a non-signatory defendant may compel a signatory plaintiff to arbitrate claims arising from a contract containing an arbitration clause. See *Price v. Ernst & Young, LLP*, 274 Ga. App. 172, 175-176 (2) (617 SE2d 156) (2005) (affirming the grant of non-signatory defendants' motions to stay the proceedings pending arbitration and finding that the signatory plaintiffs were equitably estopped from denying that the arbitration clause applied to their claims); *Lankford v. Orkin Exterminating Co.*, 266 Ga. App. 228, 231-232 (3) (597 SE2d 470) (2004) (relying on equitable estoppel to affirm the grant of a

motion to stay and compel arbitration filed by signatory and non-signatory defendants against plaintiffs, each of whom was a signatory or third-party beneficiary of the contract giving rise to the claims); *AutoNation Financial Svcs. Corp. v. Arain*, 264 Ga. App. 755, 762 (3) (592 SE2d 96) (2003) (reversing the denial of the non-signatory defendant's motion to compel arbitration and finding that equitable estoppel barred the signatory plaintiff from objecting to arbitration).

We have also relied on equitable estoppel to allow a signatory defendant to enforce an arbitration clause against a nonsignatory plaintiff where suit was brought on a contract containing an arbitration clause and where a second plaintiff was a signatory to the agreement. For example, in *Helms*, supra, we found that the non-signatory plaintiff could be required to arbitrate her claims concerning alleged construction defects in a home she owned with her husband (who was also her co-plaintiff). In so doing, we noted that although the plaintiff-wife had not signed the purchase-and-sale agreement containing an arbitration clause, her husband had. 305 Ga. App. at 865. Given that fact, and because her claims "[were] so intertwined with her husband's claims," we found that equitable estoppel required that the wife's claims be subject to arbitration. Id. at 866 (noting that "[a] party cannot rely on the

contract when it works to its advantage and then repute [that contract] when it works to its disadvantage") (citation and punctuation omitted). See also *LaSonde v. CitiFinancial Mtg. Co.*, 273 Ga. App. 113, 114-115 (1) (614 SE2d 224) (2005) (concluding that a non-signatory plaintiff was equitably estopped from avoiding arbitration of a claim she brought with her co-plaintiff husband based on a promissory note signed by the husband and containing an arbitration clause).

As the foregoing cases demonstrate, Georgia courts have only allowed *a defendant* to rely on equitable estoppel to force arbitration of claims by a plaintiff where the plaintff's claims arose out of a contract containing an arbitration clause. The parties have cited to no case — and we are aware of none — in which a non-signatory defendant has been compelled to arbitrate claims brought against it by a signatory to the arbitration agreement, even where the signatory plaintiff is also asserting claims against a signatory defendant. See generally *Order Homes*, 300 Ga. App. at 339 (3) (indicating that nonsignatory defendants who had not participated in the motion to compel arbitration could not be ordered to participate in an arbitration proceeding). Under such circumstances — including the circumstances that exist in this case — the rationale for applying equitable estoppel does not exist.

As noted above, the purpose of applying equitable estoppel to compel a plaintiff to arbitrate his claims is to prevent the plaintiff from relying on the contract when it works to his advantage (i.e., to establish his claim), and repudiating it when it works to his disadvantage (i.e. to avoid arbitration). See *Helms*, 305 Ga. App. at 865-866; *Order Homes*, 300 Ga. App. at 339 (2). See also *Lawson v. Life of the South Insurance Co.*, 648 F3d 1166, 1172 (II) (B) (11th Cir. 2011) (applying Georgia law to hold that "[i]n all cases, the lynchpin for equitable estoppel is equity, and the point of applying it to compel arbitration is to prevent a situation that would fly in the face of fairness") (citation and punctuation omitted). Here, given that BMLG did not rely on the DEF Partnership Agreement to assert a claim against DEF, the doctrine of equitable estoppel may not be used to compel BMLG to participate in the underlying litigation. Put another way, "[t]he equitable estoppel exception simply does not apply in this context, and cannot be used to require a nonsignatory [defendant] to arbitrate a dispute where" that defendant was not a party to the underlying arbitration agreement. *Leevers v. Bilberry*, No. 4:04-CV-34 (COL), 2007 WL 315344 at *4 (II) (C) (M. D. Ga. January 31, 2007) (applying federal law and holding that while equitable estoppel can be used to "to estop a signatory [plaintiff] from avoiding an agreement

17

to arbitrate," it cannot be used to require a non-signatory defendant to participate in the arbitration) (emphasis onitted). See also *Thompson-CSF, S. A. v. American Arbitration Assoc.*, 64 F3d 773, 779 (I) (E) (2d Cir. 1995) (same); *Citigroup Global Markets v Berggren*, No. 1:06-CV-1075-WSD, 2007 WL 9701710 at *10 (N. D. Ga. March 23, 2007) (holding that although non-signatory plaintiffs were intended beneficiaries of the contract at issue, they could not use the doctrine of equitable estoppel "offensively," to require a signatory defendant to arbitrate the claims asserted by plaintiffs).

Given that equitable estoppel cannot apply under the circumstances of this case, we find that the trial court erred in relying on that doctrine to compel BMLG to arbitrate the claims against it. We therefore vacate that portion of the trial court's order compelling arbitration and remand for further proceedings consistent with this opinion.

2. DEF argued in the court below, as it does in its appellate brief, that in addition to equitable estoppel, two more distinct legal theories required BMLG to arbitrate the claims at issue. Specifically, DEF asserts that BMLG can be required to arbitrate because it was a party to the Transition Agreement and that agreement, in

turn, incorporated the DEF Partnership Agreement by reference. DEF further argues that the contract law concepts of identity of interest and successor liability require that BMLG be compelled to arbitrate. In its brief, BMLG argues that neither of these additional legal doctrines apply to this case. Given that fact, and given the trial court's error in applying the doctrine of equitable estoppel, BMLG further asserts that the trial court erred in denying its motion for summary judgment. We address each of DEF's alternate legal theories below.

(a) With respect to the first alternate theory raised by DEF, we note that the trial court rejected the argument that BMLG was subject to the arbitration clause found in the Partnership Agreement. We agree with the trial court on this issue.

Assuming arguendo that BMLG could be considered a party to the Transition Agreement, we find that the agreement did not incorporate the DEF Partnership Agreement. In support of its incorporation by reference argument, DEF relies on paragraph 15 of the Transition Agreement. As noted above, that paragraph provides, in relevant part, that the Transition Agreement "shall have no impact on any term of the DEF Partnership Agreement . . . including but not limited to the provisions

19

regarding contingency fee arrangements contained in Article XVIII of the Partnership Agreement."

In determining whether this paragraph operates to incorporate the DEF Partnership Agreement by reference, we are cognizant that "[t]he cardinal rule of [contract] construction is to ascertain the intention of the parties." (Citation and punctuation omitted.) *Freeman Capital Group, LLC v. Drury*, 367 Ga. App. 843, 847 (1) (887 SE2d 812) (2023). We presume, however, "that the [parties'] intent is reflected in the contractual language." *Bearoff v. Craton*, 350 Ga. App. 826, 834 (1) (830 SE2d 362) (2019). Thus, our first step in construing the contractual language at issue is to determine whether, viewed in the context of the Transition Agreement as a whole, the language of paragraph 15 "is clear and unambiguous. If it is, [we] simply enforce[] the contract according to its clear terms; the contract alone is looked to for its meaning." (Citation and punctuation omitted.) *Freeman Capital Group*, 367 Ga. App. at 847 (1). See also *Dean v. Dean*, 361 Ga. App. 698, 700-701 (1) (865 SE2d 292) (2021) ("where the terms of a written contract are clear and unambiguous, the courts will look to the contract alone to find the intention of the parties") (citation and punctuation omitted).

When reading paragraph 15 in the context of the entire Transition Agreement, we find no ambiguity — the paragraph simply says that nothing in the Transition Agreement may be interpreted so as to amend or otherwise impact the DEF Partnership Agreement. Put another way, this language states that nothing in the Transition Agreement changes the current rights and obligations that DEF, Burke, and Moore have under the Partnership Agreement. It does not say, either explicitly or implicitly, that the Partnership Agreement is incorporated by reference.

In reaching this conclusion, we note that DEF, Burke, and Moore are all sophisticated parties, each of whom was represented by counsel with respect to the Transition Agreement. Thus, had the parties wished to incorporate all or part of the DEF Partnership Agreement by reference, they could have done so. As written, however, paragraph 15 does not accomplish such an incorporation. And in arguing that we should hold otherwise, DEF is, in essence, asking us to "revise [the Transition Agreement] under the guise of construing it." (Citations and punctuation omitted.) *Bearoff*, 350 Ga. App. at 834 (1). It is, however, "the function of the court to construe the contract as written and not to make a new contract for the parties." (Citation and punctuation omitted.) *Roquemore v. Burgess*, 281 Ga. 593, 595 (642 SE2d 41) (2007).

(b) As BMLG acknowledges in its reply brief, the trial court did not make any rulings on DEF's argument that BMLG could be compelled to arbitrate under the theories of identity of interest and successor liability. As a court of review, however, this Court "is for the correction of errors of law" made by the trial courts. *Trident Wholesale v. Brown*, 370 Ga. App. 505, 511 (1) (897 SE2d 610) (2024). "An error of law has as its basis a specific ruling made by the trial court." (Citation and punctuation omitted.) *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999). Thus, when "the trial court has not ruled on an issue, we will not address it." (Punctuation and footnote omitted.) *Trident Wholesale*, 370 Ga. App. at 511 (1). See also *Waters v. Glynn County*, 237 Ga. App. 438, 441 (4) (514 SE2d 680) (1999) ("Where a trial court does not rule on an issue, it remains outside the jurisdiction of this Court and we cannot consider it.") Accordingly, we vacate the trial court's denial of summary judgment and remand for the lower court to address, in the first instance, the merits of DEF's arguments on this alternate basis for compelling arbitration.

3. In its final enumeration of error, BMLG asserts that the trial court erred in finding that BMLG voluntarily submitted the question of arbitrability to the arbitration

22

panel. We agree with BMLG, and we address this enumeration of error more fully below, in conjunction with the cross-appeal in Case No. A24A1798.[2]

*Case No. A24A1798*

4. In its cross-appeal, DEF contends that even if BMLG was not otherwise bound by the arbitration agreement, the trial court erred in allowing BMLG to relitigate the issue of arbitrability de novo. More specifically, DEF contends that because BMLG voluntarily submitted to the arbitrators the question of whether it could be made a party to the arbitration, BMLG was bound by the arbitrators' decision on that issue. Thus, DEF argues that BMLG "could only challenge the [arbitrators' decision] on the limited statutory bases for vacating [arbitration] awards," and the trial court therefore erred in conducting a de novo review of the arbitrators' decision. We find no error.

As one federal court has observed, "[t]here are three types of disputes concerning arbitration: (1) the merits of the dispute; (2) whether the parties agreed to

---

[2] As the discussion infra in Division 4 makes clear, the trial court's finding on this issue is inconsistent with its finding that DEF failed to come forward with "clear and unmistakable evidence" that BMLG agreed to have the question of arbitrability decided by the arbitrators, and that the arbitrators' decision was therefore subject to de novo review.

arbitrate the merits; and (3) who has the primary power to decide whether the parties agreed to arbitrate the merits." (Citation, punctuation, and emphasis omitted.) *ConocoPhillips v. Local 13-0555 Steelworkers Intl. Union*, 741 F3d 627, 630 (5th Cir. 2014). In *First Options of Chicago v. Kaplan*, 514 U. S. 938 (115 SCt 1920, 131 LEd2d 985) (1995), the United States Supreme Court held that the answer to the "who" question dictates the standard of review to be applied by a court reviewing an arbitrator's decision as to whether a party can be compelled to arbitrate. The Court explained:

> Just as the arbitrability of the merits of the dispute depends upon whether the parties agreed to arbitrate that dispute, so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about that matter. Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court's standard for reviewing the arbitrator's decision about that matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate. That is to say, the court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances. If, on the other hand, the parties did not agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently.

(Citations and emphasis omitted.) 514 U. S. at 943 (II).

The Supreme Court further cautioned that in determining whether parties agreed to have an arbitrator decide if a particular claim was subject to arbitration, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." (Citation and punctuation omitted.) *First Options*, 514 U. S. at 944 (II). This is because "the law treats silence or ambiguity about the question 'who (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question 'whether a particular merits -related dispute is arbitrable because it is within the scope of a valid arbitration agreement[.]'" (Citations and emphasis omitted.) Id. at 944-945 (II).

Applying *First Options*, courts have held that "clear and unmistakable evidence" of an agreement to submit the threshold question of arbitrability can be found in one of two circumstances. First, the parties' arbitration agreement may delegate that question to the arbitrators. See *Brown v. RAC Acceptance East, LLC*, 303 Ga. 172, 175-176 (2) (a) (809 SE2d 801) (2018). Additionally, at least two federal appellate courts have held that a party's conduct may constitute clear and unmistakable evidence of its consent to have the arbitrator decide whether a particular

claim is arbitrable. See *Cleveland Elec. Illuminating Co. v. Utility Workers Union of America*, 440 F3d 809, 813 (II) (B) (1) (6th Cir. 2006) (holding that a party agreed to allow the arbitrators to decide the scope of the arbitration clause where the party did not question the arbitrators' authority to do so until after arbitration was complete and the award was appealed to the district court); *Rock-Tenn Co. v. United Paperworkers Intl. Union AFL-CIO*, 184 F3d 330, 334 (III) (4th Cir. 1999) (party consented to having arbitrators decide issue of arbitrability where it "vigorous[ly] participat[ed] on the merits debate during the arbitration proceedings, and . . . utter[ly] fail[ed] during those proceedings to challenge the arbitrator's authority to determine the dispute, or even to preserve the issue for resolution by the court"). Finally, on one occasion, this Court has found conduct-based waiver of a party's right to have a court, rather than an arbitrator, decide the question of arbitrability. See *Palaio v. Letson*, 272 Ga. App. 119, 121 (611 SE2d 787) (2005) (affirming a trial court's holding that by submitting the arbitrability question to the arbitrator and obtaining a ruling on the same, a party "'implicitly agreed' to arbitrate the issue of the arbitrator's jurisdiction").

Relying on the foregoing line of cases, DEF argues that BMLG waived its right to have a court decide whether it could be subject to arbitration by: (i) responding to

the motion to add BMLG as a party to the arbitration without reserving its right to have the issue decided by a court; and (ii) subsequently moving for reconsideration of the arbitrators' initial decision. DEF further contends that, given this evidence of BMLG's agreement to have the arbitrators decide the arbitrability question, the trial court erred in reviewing de novo the question of whether BMLG could be made a party to the arbitration. We disagree.

Notably, all of the cases relied on by DEF involved a situation where the dispute centered on the scope of an arbitration agreement to which all parties were signatories. Indeed, *First Options* is the only case we have found addressing the question of whether defendants who were not otherwise parties to the arbitration agreement could be compelled to arbitrate. *First Options* arose out of debts owed by Manuel Kaplan, his wife, and his wholly-owned investment firm, MK Investments, Inc. ("MKI"). *First Options*, 514 U. S. at 940. The workout agreement consisted of four documents, only one of which contained an arbitration clause. Id. at 940-941. Although MKI had signed the document containing the arbitration clause, neither of the Kaplans had. Id. at 941. After the Kaplans and MKI failed to pay the debts owed it, First Options filed arbitration claims against all three. Id. at 940. Arguing that First Options's claims

against them were not subject to the arbitration agreement, the Kaplans filed objections with the panel. Id. at 941. The arbitrators overruled the objections, finding that even though the Kaplans were not signatories to the arbitration agreement, the panel had the power to rule on the merits of the dispute. Id. The panel found in favor of First Options, and the Kaplans appealed. Id. The district court confirmed the arbitration award, but the Third Circuit reversed, finding that under the workout agreement, the claims against the Kaplans were not subject to arbitration. *Kaplan v. First Options Chicago*, 19 F3d 1503, 1513-1516 (V) (A) (3d Cir. 1994).

The Supreme Court affirmed both the Third Circuit's de novo review of the district court's order as well as its conclusion that the claims against the Kaplans were not subject to arbitration. In doing so, the Court rejected First Options's argument that "the Kaplans' filing with the arbitrators a written memo objecting to the arbitrators' jurisdiction" evidenced their agreement to have the arbitrators decide the question of arbitrability. 514 U. S. at 946 (II). Specifically, the Court held that

> merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e., a willingness to be effectively bound by the arbitrator's decision on that point. To the contrary, insofar as the Kaplans were forcefully objecting to the arbitrators deciding their

dispute with First Options, one naturally would think that they did not want the arbitrators to have binding authority over them.

(Emphasis omitted.) Id. The Supreme Court further held that a party disputing an arbitrator's jurisdiction is not required "to get an independent court decision on the question of arbitrability without arguing the issue to the arbitrators." Id. And the Court noted that under the circumstances, there was "no strong arbitration-related policy favoring [arbitration]. After all, the basic objective in this area is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes, but to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms, and according to the intentions of the parties." (Citations and punctuation omitted.) Id. at 947 (II).

Turning to the case at hand, the record shows that from the outset, BMLG took the position that the claims against them were not subject to arbitration, and strenuously objected to being added as parties. Nor did BMLG's motion for reconsideration of the arbitrators' initial decision indicate an intent to be bound by that decision. Instead, that motion reiterated BMLG's position that it was not a party to the arbitration agreement and that the question of arbitrability was for the court.

Given the evidence of record, and applying the rationale of *First Options*, we find that the trial court did not err in conducting a de novo review of the arbitrators' decision. See *First Options*, 514 U. S. at 946-947 (II). We further find that BMLG did not agree to be bound by the arbitrators' decision as to whether the claims against it were subject to arbitration. See *Lynn v. Lowndes Co. Health Svcs., LLC*, 354 Ga. App. 242, 244 (1) (840 SE2d 623) (2020) (where a party challenged jurisdiction of the arbitrator at the outset of the arbitration proceeding, she could appeal the arbitrator's decision even though the award favored her). See also *Ribadeneira v. New Balance Athletics*, 65 F4th 1, 17 (II) (B) (2) (1st Cir. 2023) ("A jurisdictional objection, once stated, remains preserved for judicial review absent a clear and unequivocal waiver. An objection to [arbitration] therefore will not be deemed abandoned unless and until the party making the objection clearly indicates its willingness to forego judicial review.") (citations and punctuation omitted); *Lucey v. FedEx Ground Package Systems*, 305 Fed. Appx. 875, 878 (3d Cir. 2009) ("where a party objects to arbitrability but nevertheless voluntarily participates in the arbitration proceedings, waiver of the challenge to arbitral jurisdiction will not be inferred") (citation and punctuation omitted).

For the reasons set forth above, we affirm the trial court's application of a de novo standard of review to the arbitration panel's decision. We also affirm the trial court's holding that BMLG was not bound by the arbitrators' decision on the question of arbitrability. We vacate those portions of the trial court's order applying equitable estoppel to compel BMLG to arbitrate the underlying claims and denying BMLG's motion for summary judgment, and we remand the case for further proceedings consistent with this opinion.

*Judgment vacated and remanded in Case No. A24A1797; affirmed in Case No. A24A1798. Gobeil and Pipkin, JJ., concur.*